UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 JUL 22 PM 2:01

CLERK
BY ___*Unw*___
DEPUTY CLERK

BARTON SOLAR, LLC,                    )
                                      )
    Plaintiff,                        )
                                      )
    v.                                )          Case No. 5:21-cv-25-GWC
                                      )
RBI SOLAR, INC. and                   )
GIBRALTAR INDUSTRIES, INC.,           )
                                      )
    Defendants.                       )

## ORDER ON MOTION TO DISMISS
### (Doc. 12)

    Defendant RBI Solar, Inc. ("RBI") moves to dismiss Counts IV-XI of the Amended

Complaint. (Doc. 5.) Defendant Gibraltar Industries, Inc. ("Gibraltar") seeks dismissal of all

counts against it. RBI does not seek to dismiss Count I (Breach of Express Warranty), Count II

(Breach of Express Contract for Indemnification), or Count III (Breach of Contract). (Doc. 12.)

## I.    Rule 12(b)(6) Standard

    In ruling on a motion to dismiss, the court accepts as true the allegations of the complaint.

The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). The court must

draw all reasonable inferences in the non-moving party's favor. *Lanier v. Bats Exch., Inc.*,

838 F.3d 139, 150 (2d Cir. 2016). Dismissal is appropriate when "it is clear from the face of the

complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are

barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000). With

these general principles in mind, the court summarizes the facts relevant to the pending motions.

1

**Facts as alleged in the Amended Complaint**

Plaintiff Barton Solar, Inc. ("Barton") is a Vermont company which owns and operates a solar farm in Barton, Vermont. (Doc. 5 ¶ 1.)  Defendant RBI is a New York company specializing in the design, manufacture, and installation of solar racking systems tailored to specific sites. (Id. ¶¶ 2-3, 15.)  Defendant Gibraltar is RBI's parent company. (Id. ¶ 3.)  On July 21, 2014, RBI contracted with Barton to engineer, manufacture, install, and service a racking system, using posts, for a 1.89-megawatt alternating current solar farm project in Barton, Vermont.[1] (Id. ¶¶ 4-6, 9.)  RBI agreed to take full responsibility for the design, fabrication and installation of the racking system. (Id. ¶¶ 10-12.)  RBI further promised to drive all racking system posts at least seven feet into the ground. (Id. ¶ 13.)  Based on a proposed geotechnical survey of the site, RBI agreed to drive the posts deeper if necessary. (Id.)  RBI warranted its work for twenty years, took responsibility for correcting defective work, and promised to indemnify Barton against losses from defective work. (Id. ¶¶ 16-17; Doc. 12-1 at 5.)  The parties agreed that damage from frost heaves was covered by RBI's warranty and indemnification obligations in their contract.  (Doc. 5 ¶ 18; Doc. 12-1 at 5) ("Frost heaving of racking is not considered ordinary wear and tear as it pertains to the Warranty, and is specifically covered").

According to Barton, RBI did not do as it said: it did not conduct a geotechnical survey and failed to account for how the frost would raise the posts. (Id. ¶¶ 19-22.)  RBI completed the project in the spring of 2015. (Id. ¶¶ 23-24.)  By September of that year, Barton found damage to

---

[1] The number of megawatts produced by a regularly operating solar farm varies, but this project should normally produce enough electricity to power several dozen homes. *See* NORTHWEST POWER AND CONSERVATION COUNCIL, https://www.nwcouncil.org/reports/columbia-river-history/megawatt, (last visited Jun. 2, 2021); *see also* ESSEX CAPITAL PARTNERS, https://www.essexcapitalpartners.com/project/barton-vt-solar-farm/, (last visited Jun. 2, 2021).

the posts due to rising caused by frost heaves. (Id.)  Barton notified RBI of the damage, which

affected the solar panels as well as the posts and rack system.  (Id. ¶ 25.)  RBI proposed and

implemented some efforts to prevent further damage. (Id.)  In June 2017, a contractor inspected

the project and found that frost heaves had caused several posts to rise. (Id. ¶ 26.)  Barton

notified RBI of the additional problems no later than August 2017. (Id. ¶ 27.)  In May 2018, the

engineer working on the project told RBI this problem would recur every winter. (Id. ¶ 28.)

By July 2019, 93% of the posts had risen and Barton's electrical equipment had suffered

more damage. (Id. at ¶ 29.)  The project engineer said the posts did not conform to the design

specifications, the contract, or the warranty and added that they must be fixed before the next

frost. (Id. ¶¶ 30-31.)  Barton wrote to RBI several additional times to request repairs, noting the

indemnification and warranty, and also requested indemnification for Barton's damages. (Id. ¶

32.)  RBI tried to honor its obligations until William Vietas, President of Gibraltar Industries'

Renewable Energy and Conservation Group, told RBI not to do so. (Id. ¶ 33.)  To date, RBI has

not repaired the damage or indemnified Barton for its costs and damages. (Id. ¶ 34.)

## Analysis

### IV.    Covenant of Good Faith and Fair Dealing

In Count IV, Barton alleges that RBI's failure to honor its warranties violated the implied

covenant of good faith and fair dealing.  RBI moves to dismiss on the grounds that Vermont does

"not recognize a separate cause of action for breach of the implied covenant of good faith and

fair dealing when the plaintiff also pleads a breach of contract based on the same contract."

*Tanzer v. MyWebGrocer, Inc.*, 209 Vt. 244, 263 (Vt. 2018).  RBI contends that the covenant of

good faith and fair dealing contract must be dismissed because it arises from the same conduct as

the breach of contract claim.

3

Plaintiff responds that RBI violated community standards and participated in dishonest conduct by taking advantage of Barton's necessitous circumstances regardless of whether the conduct at issue also violated the express contract. (Doc. 14 at 4.)  Barton alleges that RBI failed to repair the racking system even after the project engineer alerted it to the continuing nature of the problem. (Id. at 5.)  Barton also offers to amend its complaint with two new allegations: (1) that RBI exploited Barton's fear of default on a public utility contract and insolvency, and (2) that RBI persisted in nonperformance to force a settlement favorable to RBI in the present dispute. (Id.)

The Vermont Supreme Court has long recognized that "[t]he covenant of good faith and fair dealing is implied in every contract." *Carmichael v. Adirondack Bottled Gas Corp. of Vt.*, 161 Vt. 200, 208 (1993).  The covenant provides a remedy in tort for conduct by a party that "violates community standards of decency, fairness or reasonableness, demonstrates an undue lack of diligence, or takes advantage of [other parties'] necessitous circumstances." *Monahan v. GMAC Mortg. Corp.*, 179 Vt. 167 (2005).  The remedy is highly dependent upon the facts and context of the parties' dispute. For example, one case holds:

> There is no specific definition of bad faith because it depends on the factual circumstances, but some examples include 'evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance. *Century Partners, LP v. Lesser Goldsmith Enterprises, Ltd.*, 184 Vt. 215 (2008)(quoting *Restatement (Second) of Contracts* § 206 cmt d (2021).

Although the covenant is an implied term in every contract, it does not support a separate cause of action in every contract dispute. Its ubiquity gives rise to a requirement that lawsuits alleging breach of the covenant concern misconduct different from the breach of contract. *See Monahan*, 279 Vt. at 188, n. 5 ("By assessing the conduct comprising the breach of contract

4

separately from the conduct supporting the good-faith-and-fair-dealing tort under *Carmichael*, we make clear that we will not recognize a separate cause of action for beach of the implied covenant of good faith and fair dealing when the plaintiff also pleads a breach of contract *based upon the same conduct*.") (emphasis in original).  This requirement of separate facts supporting the alleged violation functions as one of the primary limiting principles for covenant claims. *See Langlois v. Town of Proctor*, 198 Vt. 137, 164 (2014) (plaintiff obliged to "identify conduct separate from that which breached the underlying contract to form the basis for the breach of the implied contract"); *Tanzer*, 209 Vt. at 265 (breach of covenant claim may be supported by "evidence beyond that relating to the breach of contract between the parties).

The claims of breach of the express contract in this case appear in Counts I-III, each of which incorporates the more detailed allegations of paragraphs 1-34.  All three contract counts allege that RBI failed to design and construct the racking system correctly and has refused to indemnify Barton for the resulting damages. (Doc. 5 ¶ 35-45.)  Count IV alleges the breach of the covenant of good faith and fair dealing. (Id. ¶ 46-50.)  Paragraphs 47-49 summarize the decisional law recognizing and describing the cause of action. (Id. ¶ 47-49)  Paragraph 50 is the only paragraph describing the conduct comprising the alleged violation:

> RBI's failure to honor its warranties violated the covenant of good faith and fair dealings implied in the contract. (Id. ¶ 50.)

This allegation is identical to the breach of warranty claim which precedes it.  It describes no separate instance of bad faith or misconduct required to support a separate claim of breach of the covenant.  Such a spare allegation is an example of the duplicative pleading which the Vermont Supreme Court repeatedly warned against.  Violating the terms of an express contract –without more – does not supply the basis for a violation of the implied covenant.

The court also considers the arguments that the amended complaint includes additional allegations of violations of community standards. Barton identifies RBI's "failing to repair the racking system, knowing that failing to do so would probably cause additional damage to the racking system; [and] persisting in the wrongful failure to repair the racking system after [notice of defective performance]." (Doc. 14 at 5.) To these, the court adds the offer by plaintiff's counsel to amend the complaint to include allegations that "RBI took advantage of Barton's necessitous circumstances by attempting to exploit Barton's fear that the entire array might fail, and thus cause Barton to default on its contract to sell electricity to a public utility, which provided Barton's sole source of revenue; and persisting in this course of conduct to force a settlement that would require RBI to do far less than required under the Barton contract." (Id.)

These allegations repackage the original contract claims that Barton failed to perform and has neither corrected the deficiencies nor indemnified its customer. Such claims are similar to the breach of covenant claims rejected as duplicative in *Langlois*, 198 Vt. at 165 ("In essence, plaintiff has argued that the conduct that breached the covenant was the Town's refusal to admit its liability for plaintiff's damages"). In *Langlois*, the Vermont Supreme Court rejected plaintiff's position "that the [defendant] put up a trumped-up defense simply to avoid admitting that it [breached its contract] and paying her for the damages she suffered." Id. at 166. It did so following a trial and a "full review of the evidence." This case reaches the court at a far earlier stage. The amended complaint provides an insufficient basis for any determination that RBI acted dishonestly or otherwise in bad faith. In the Response memorandum, Barton's counsel has submitted a more spirited account. The court will dismiss Count IV as it stands, subject to the right of Barton to move to amend within 30 days.

## V.    Detrimental Reliance

In Count V, Barton alleges that RBI made express representations to plaintiff regarding the twenty-year warranty and indemnification clauses and that Barton relied on those representations to their detriment. (Doc. 5 ¶¶ 52-53.)  RBI moves to dismiss this claim on the grounds that this count is, in reality, a promissory estoppel claim, and that promissory estoppel is unavailable when the parties' relationship is governed by a written contract. *Big G Corp. v. Henry*, 148 Vt. 589, 595 (1987); (Doc. 12 at 5.)

Barton responds that RBI's promises to perform a geotechnical survey at the proposed site induced Barton to rely on its promises. (Doc. 14 at 8.)  Barton also argues that because defendants seek only a partial motion to dismiss, and because discovery on the tort and contract claims are closely related, neither side will benefit from a dismissal of a portion of the case before discovery. (Id.)

The court dismisses Count V because detrimental reliance, or promissory estoppel, is only available in the absence of a written contract. *Est. of Sawyer v. Crowell*, 151 Vt. 287, 294 (Vt. 1989) (if a written contract governs the parties' relationship, promissory estoppel does not apply).  In this case, Barton entered into a written contract with RBI for a solar panel racking system which includes written representations concerning both the geotechnical survey and the indemnification clause. (Doc. 12-1 at 5-6.)  Since these provisions are written into the contract, breaches of those provisions are actionable as violations of contract, and not on the basis of promissory estoppel. *See Overlock v. Cent. Vt. Pub. Serv. Corp.*, 126 Vt. 549, 552-553 (1967) (discussing the requirements of promissory estoppel doctrine).  Barton makes its promissory estoppel claim on the basis of these two provisions so the claim of detrimental reliance must be dismissed. (Doc. 12-1 at 5-6.)

## VI.   Negligence

In Count VI, Barton alleges that RBI was negligent because it breached its duty to provide professional engineering services in the design, installation, construction, and repair of the solar project by deviating from the standard of care for experts in the industry. (Doc. 5 ¶¶ 57-60.)  RBI moves to dismiss on the grounds that Barton's claim is barred by the economic loss rule in the absence of physical harm to plaintiff. (Id. at 314.)  RBI also notes there is no separate duty of reasonable care formed by a special relationship between the parties apart from the contract which would trigger the professional services exception to the economic loss rule. *EBWS, LLC v. Britly Corp.*, 181 Vt. 513, 524-525 (Vt. 2007).

Barton responds that it pled sufficient facts to establish a special relationship for professional engineering services which should trigger the professional services exception to the economic loss rule. *Assoc. Elec. & Gas Ins. Servs., Ltd. v. Elec. Power Sys., Inc.*, Docket No. 5:14-cv-68 2014 WL 12717669 (D. Vt. Dec. 23, 2014).  Barton adds that the damage to other property exception to the economic loss rule should also apply because the Amended Complaint includes allegations of "post-jacking" which damaged its electrical equipment. *Walsh v. Cluba*, 198 Vt. 453, 466-67 (Vt. 2015).

The court dismisses Count VI because Barton has not pled sufficient facts to trigger the professional services exception to the economic loss rule. *Assoc. Elec. & Gas Ins. Servs.*, 2014 WL 12717669 at *9.  A contract for engineering services could trigger the professional services exception to the economic loss rule if an engineer was sued. However, as RBI points out, this was a construction contract, not an engineering services contract, so no special relationship could have formed. (Doc. 12 at 6.)  The duties and responsibilities for designing the project were assumed by two engineering companies not party to this lawsuit. Article 3 of the contract states:

8

> The Project has been designed by <u>Krebs and Lansing Consulting Engineers, Inc.</u> <u>and SP Electrical Engineering Company</u> (together, the **"Engineer"**) which is to act as Owner's representative, assume all duties and responsibilities, and have the rights and authority assigned to Engineer in the Contract Documents in connection with the completion of the Work in accordance with the Contract Documents. (Doc. 12-1 at 2.)

Consistent with this provision, the signature line for RBI identifies the company as

"Contractor," not "Engineer" or other term which would imply a professional services

special relationship. (*Id.* at 8.) Finally, the "Standard General Conditions of the

Construction Contract" label the agreement between the parties as a construction

contract, not an engineering contract. (*Id.* at 26.)

Besides the contract itself, the case law does not support Barton's claim.

*Britly*, 181 Vt. at 524-525. Like the defendant contractor in that case, RBI held itself out "as a construction contractor and not as a provider of a professional service." *Id.* at 525. Whatever managerial function RBI assumed under the contract over the engineering work is part of the contract, not evidence of a separate special relationship. *Id.* at 524-525.

Barton's argument concerning the damage to other property exception also fails because the case it cites supports the contrary conclusion. *Walsh*, 198 Vt. at 466 ("… injury to the product or property that is the subject of a contract is generally considered a disappointed economic expectation for which relief lies in contract rather than tort law"). In *Walsh*, physical damage to the leasehold was covered by contract, not negligence. Similarly, the physical damage alleged in this case – heaving and distortion of the racking system – is damage to the very property subject to the construction contract. *See Long Trail House Condo. Assoc. v. Engelberth Constr., Inc.*, 192 Vt. 322 (2012) (claims of reduced value or cost of repair due to faulty construction sound in contract rather than tort).

9

## VII.    Negligent Misrepresentation

In Count VII, Barton alleges that RBI supplied it with false information in the course of a business transaction and failed to exercise reasonable care in obtaining the information. (Doc. 5 ¶¶ 61-64.) Barton further alleges that it relied on the false information to its detriment and suffered economic losses as a direct and proximate result. (Id. ¶¶ 65-66.) RBI moves to dismiss on two grounds. First, it argues that the economic loss rule precludes negligent misrepresentation claims against architects and other members of the construction trade. *Hunt Constr. Group, Inc. v. Brennan Beer Gorman / Architects, P.C.*, 2008 WL 4870993 at \*5; *see also City of Burlington v. Zurn Indus., Inc.*, 135 F.Supp. 2d 454, 461-462 (D. Vt. 2001). Second, it claims that the negligent misrepresentation claim is duplicative of Barton's breach of contract claim. (Doc. 12 at 9; Doc. 5 ¶¶ 35-45.)

Barton responds that it may recover economic damages in a negligent misrepresentation claim, even in the absence of a special relationship. *RSD Leasing v. Navistar*, Order on Motion for Judgment on the Pleadings, Case No. 5:15-cv-205 (citing *Russo v. Navient Sols., LLC*, 2018 WL 14743554 at \*11 (D. Vt. Mar. 23, 2018)).

The court dismisses Count VII because the parties' relationship is governed by their written construction contract. "Holding [defendant] to its negotiated contractual remedies maintains Vermont law's separation between contract and tort law and allows parties to reliably allocate risks and costs during their bargaining. This separation is especially important in the construction industry, because 'fees charged by architects, engineers, contractors, developers, vendors, and so on are founded on their expected liability exposure as bargained and provided in the contract." *Hunt*, 2008 WL 4870993 ¶ 4 (quoting *Britly*, 181 Vt. at 525).

## VIII.   Fraudulent Inducement

In Count VIII, Barton alleges that RBI made several representations to Barton in the contract, that RBI knew at the time it made representations that the matter was not as it represented it to be, that RBI knew Barton would rely on RBI's representations, that Barton reasonably relied on those representations, and that Barton has sustained damages as a result. (Doc. 5 ¶¶ 68-78.)  These alleged misrepresentations concern promises by RBI to perform under the contract.  They include promises to "provide a custom-engineered racking system specific to the site conditions at the Barton solar farm," to perform a geotechnical analysis of the Barton site, to honor warranties and indemnify Barton Solar for any loss or damage." (Doc. 5 ¶¶ 68-73.) Barton alleges that RBI knew when it entered the contract that "it did not have the basis for the representations that it stated or implied."  (Doc. 5 ¶ 75.)

RBI moves to dismiss the fraudulent inducement claim on the ground that this claim alleges a fraudulent nonperformance of the contract, which is not actionable under Vermont law. *See Bevins v. King*, 147 Vt. 203, 204 (1986) ("… fraud must be extraneous to the contract, rather than a fraudulent nonperformance of the contract itself.")  Barton responds with a general assertion that dismissal of this claim is premature. (Doc. 14 at 6.)

The elements of a claim of fraudulent inducement  are well-established.  "An action for fraud and deceit will lie upon an intentional misrepresentation of existing fact, affecting the essence of the transaction, so long as the misrepresentation was false when made and known to be false by the maker, was not open to the defrauded party's knowledge, and was relied on by the defrauded party to his damage." *Union Bank v. Jones*, 138 Vt. 115 (1980).  F.R.Civ.P. 9(b) imposes a heightened pleading requirement of "particularity."  The burden of proof is also raised to a clear and convincing standard. *Lewis v. Cohen*, 157 Vt. 564 (1991).

11

The court denies the motion to dismiss Count VIII.   Promises and representations made when a contract is negotiated may form the basis for a fraud claim.   In *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 133 (1993), the Vermont Supreme Court held that "[w]ith respect to promises to perform …misrepresentations about future actions can be fraudulent if defendant, at the time of the statement, intends to act differently from the promise."   That the statement was made in the context of the negotiation of a construction contract does not rule out a claim that the statement was false when made and material to the plaintiff's decision to enter into the contract.

In this case, plaintiff seeks to prove that RBI knew at the time of contract formation that its promises to deliver a racking system designed and constructed to meet the challenges of the Barton installation were false.   That is a more ambitious undertaking than proof of breach of the construction contract.   But the court cannot rule as a matter of law that Barton will be unable to produce sufficient proof at summary judgment or trial to meet the elements of the fraud claim. For this reason, the court denies the motion to dismiss Count VIII (Fraudulent Inducement).

## IX.   Fraudulent Concealment

In Count IX, Barton alleges that RBI knew that its failure to conduct a geotechnical study of the site would not be easily detectable by Barton, that RBI intentionally and purposefully failed to disclose the lack of such study, that Barton did not and could not reasonably discover this material fact, and as a result Barton has suffered and continues to suffer damages. (Doc. 5 ¶¶ 79-88.)  RBI responds with arguments similar to those regarding Count VIII: Barton has not sufficiently stated this claim because they have conflated fraud claims with contract claims. *Bergman v. Spruce Peak Realty, LLC*, 847 F. Supp. 2d 653, 674 (D. Vt. 2012) (holding a plaintiff may sufficiently state a claim for breach of contract while failing to state a claim for fraud).

Fraudulent nondisclosure or concealment requires proof of "concealment of facts by one with knowledge, or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." *Silva v. Stevens*, 156 Vt. 94 (1991). The duty to disclose is not universal. "The test for liability for failure to disclose facts material to the transaction is some duty, legal or equitable, arising from the relations of the parties, such as that of trust or confidence, or superior knowledge or means of knowledge." *Cheever v. Albro*, 138 Vt 566, 571 (Vt. 1980).

With these general principles in mind, the court turns to the specific allegations of the Amended Complaint. Barton makes a single claim of fraud: after failing to conduct a geotechnical study to avoid frost damage, RBI purposely withheld this information knowing that Barton would have no means of discovering the omission. (Doc. 5 ¶¶ 80-87.) These allegations readily provide the basis for a claim of breach of contract. The issue is whether they also satisfy the requirements of fraud.

Barton also alleges RBI concealed its decision to forego the geotechnical study. That decision lay exclusively within the knowledge of RBI. In a variation of the famous observation by the late Donald Rumsfeld, Barton could not be expected to know what RBI did not do. The court denies the motion to dismiss the fraudulent concealment claim for the same reason it permitted the fraudulent inducement claim to proceed. Factual development may reveal whether the omission of the geotechnical study – if it was omitted at all –occurred and whether RBI had a duty to disclose this information to Barton. It is not possible on the basis of the pleadings alone to rule out the possibility that Barton will develop facts sufficient to support such a claim.

## X.     **Intentional Interference with Contractual Relations**

Barton alleges that Gibraltar – RBI's parent corporation – intentionally interfered in its contract with RBI by instructing RBI not to fulfill its duty under its warranty. (Doc. 5 ¶¶ 89-93.)

13

Gibraltar moves to dismiss on the grounds that Gibraltar owns and controls RBI and a third party cannot interfere with itself. Barton responds by urging the court to follow Delaware decisional law in permitting a tortious interference claim against a parent corporation that acts maliciously or in bad faith to cause injury. *See Shearin v. E.F. Hutton Group, Inc.*, 652 A.2d 578 (Ct. of Chancery of Del., New Castle Cnty. 1994); *NAMA Holdings, LLC v. Related WMC LLC*, 2014 WL 6436647 C.A. No. 7934-VCL, (Court of Chancery of Del. Nov. 17, 2014).

The general rule is that a parent corporation that directs its subsidiary to breach a contract is not liable for tortious interference because the tort is limited to interference by a third-party. *See Boulevard Assocs. v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1036 (2d Cir. 1995) (applying Connecticut law)(parent company does not engage in tortious conduct when it directs its wholly-owned subsidiary to breach a contract that is no longer in the subsidiary's economic interest to perform). Vermont has not addressed this issue with respect to parent companies. It follows the near-universal rule that employees cannot be sued for tortious interference when they direct or influence the organization of which they are a part. *See Skaskiw v. Vt. Agency of Agric.*, 198 Vt. 187, 200-201 (Vt. 2014) (employees of state agencies cannot be sued for tortious interference with contract with their employers); *Stone v. Town of Irasburg*, 196 Vt. 356 (Vt. 2014) (selectboard members are not third parties for purposes of tortious interference with a town contract).

Some courts have recognized a limited exception to the general rule for malicious conduct by the parent corporation. The decision of the Vermont Supreme Court in *Skaskiw* recognized the possible application of such a principle: "We are not deciding that we would allow a tortious interference claim against an agent of a third party based on malice, but only that

14

no malice is alleged here, so under any definition of the applicable elements, [plaintiff's] complaint is insufficient." 198 Vt. at 201, n. 7.

In Delaware, decisional law has developed a balancing test to identify cases in which a parent corporation may be held liable for tortious interference with the contracts of its subsidiaries. In the view of one judge, "[t]hus, in my opinion, where corporations affiliated through joint ownership confer with respect to a contract to which one of them is party and a breach of that contract follows, there can be no non-contractual liability to the affiliated corporation, which is privileged to consult and counsel with its affiliates, unless the plaintiff pleads and proves that the affiliate sought not to achieve permissible financial goals but sought maliciously or in bad faith to injure plaintiff." *Shearin*, 652 A.2d at 591. In distinguishing between permissible and malicious conduct – either of which may have led to a breach of contract – courts in Delaware have turned to the multi-factorial test for improper interference set out in Section 767 of the Restatement of Torts (Second) (2021). These criteria are offered to establish improper interference generally, but they include factors such as the nature and motive of the actor's conduct relevant to a determination of malice or ill will.

It is unnecessary for the court to predict the likely course of Vermont law on the issue of parent company liability for tortious interference. At most, some courts have ruled that malice or ill will on the part of the parent corporation may overcome the general rule that a parent and its subsidiary are a single entity for purposes of tortious interference. The law of tortious interference has developed no further because of courts' obvious reluctance to impose parent-level liability whenever a subsidiary breaches a contract with the knowledge of its parent.

The specific allegations in the complaint concerning the involvement of Gibraltar in the contract dispute between Barton and RBI appears at paragraph 33 of the complaint:

15

> RBI made some efforts to honor its warranty obligations until Gibraltar, through William
> Vietas, President of Gibraltar's Renewable Energy and Conservation Group, instructed
> RBI not to honor its warranty and not to indemnify Barton Solar.

(Doc. 5 ¶ 33.)  These allegations are insufficient to establish malice or ill will on the part of

Gibraltar.  Even if this court were to apply the standard applied by the Delaware courts, the

complaint would fall short because there are no allegations of improper motive or conduct

sufficient to support an exception to the general rule that parent corporations are not subject to

liability for tortious interference.

## XI.   Violation of Vermont's Consumer Protection Act

The elements of a private cause of action under the Vermont Consumer Protection Act, 9

V.S.A. § 2451 *et seq.* ("VCPA") are: (1) a representation, omission, or practice likely to mislead

consumers, (2) the consumer must be interpreting the language reasonably under the

circumstances, and (3) the misleading effects must be material, that is, likely to affect the

consumer's conduct or decision regarding the product. *Carter v. Gugliuzzi*, 168 Vt. 48, 56 (Vt.

1998).

Barton alleges that RBI's design and construction of the racking system, its

indemnification of Barton's damages, and its warranty to Barton for the racking system are

"goods" and "services" subject to the VCPA.  (Doc. 5 ¶¶ 95, 97, 99.)  Barton  alleges that RBI

failed in its obligations under the VCPA.  (Id. ¶¶ 96, 98, 100, 102-103.)  Barton also alleges that

Gibraltar instructed RBI not to honor its obligations. (Id. ¶ 101.)

RBI moves to dismiss on the grounds that the Vermont Supreme Court's interpretation of

the phrase "in commerce" in the statute bars the claim as a matter of law. 9 V.S.A. § 2453(a);

*Long v. Quorum Health Res., LLC*, case no. 2:13-cv-189, 2014 WL 1795156 (D. Vt. May 6,

2014) (denying a motion to amend as futile because a transaction between parties under common law is not "in commerce"), *aff'd*, 590 F. App'x. 103 (2nd Cir. 2015). RBI emphasizes the language in the contract which shows Barton and RBI entered into a construction contract, noting the specific wattage of the project, its large commercial scale, and its unique tailoring to the project site. (Doc. 5 ¶¶ 6, 9, 15.) RBI argues that this high level of customization does not typically occur in the consumer marketplace and that such a specialized product is not for general consumption. *Foti Fuels, Inc. v. Kurrle Corp.*, 195 Vt. 524, 536 (Vt. 2013) (affirming dismissal of a VCPA counterclaim because a transaction is not "in commerce" for the purposes of a VCPA claim if it does not occur in a consumer marketplace, did not involve goods or services sold for general consumption, or if the transaction did include high levels of customization).

Barton responds that the test arising from *Foti Fuels* to determine whether something is "in commerce" has two parts:

(a) The defendant has an ongoing business in which it holds itself out to the public as providing goods or services; and

(b) The practice complained of breaches a duty owed to consumers in general, not merely the plaintiff. *Id.* ¶ 21.

Barton alleges that RBI maintains a website advertising its solar panel services. (Doc. 5 ¶ 15.) It also alleges that RBI provides ongoing engineering services and solar farm goods. *Id.* Thus, RBI is an ongoing business. (Id.) Barton then argues that RBI breached a duty owed to consumers in general. (Doc. 14 at 22.) Barton says that RBI failed to design a racking system for the site and did not honor its warranty. (Id.) Barton denies that the Barton solar project was too customized

to qualify as a consumer product. *See Poulin v. Ford Motor Co.*, 147 Vt. 120 (1986) (sale of Ford special order automobile subject to VCPA).

The court dismisses Count XI because Barton has not alleged sufficient facts to show that the events giving rise to its claim were "in commerce" under the statute. *Foti Fuels*, 195 Vt. ¶ 21. Barton has alleged sufficient facts to show that RBI is an ongoing business under the test. *Id.* However, it has not successfully alleged that RBI breached any duty owed to consumers in general. RBI contracted to build a large, complex commercial solar field for Barton.  Such a project cannot be considered a consumer product or service of the type covered by the VCPA.

In the *Foti Fuels* decision, the Vermont Supreme Court distinguished between practices which have a potential harmful effect on the consuming public and transactions negotiated between parties on an individual basis.  Only the former are subject to the VCPA.  "By contrast, transactions resulting not from the conduct of any trade or business but rather from private negotiations between two individual parties who have countervailing rights and liabilities established under common law principles of contract, tort and property law remain beyond the purview of the statute."  195 Vt. at 536.  The construction contract at issue in this case clearly describes a complex transaction negotiated between two corporations.  It cannot reasonably be mistaken for a "consumer transaction."

Barton relies on the decision of the Vermont Superior Court in *Town of Fairlee v. Forcier Aldrich & Associates*, 2018 WL 8666308 case no. 211-12-17 Oecv., (Vt. Super. Nov. 7, 2018), which holds that a company that sells lumber planks to both consumers and commercial clients can be held liable under the statute.  But Barton does not allege that RBI sells solar panels to consumers.  It alleges  that RBI designs and constructs "solar mounting systems for commercial and utility-scale projects." (Doc. 5 ¶ 6.)  Unlike the planks in *Town of Fairlee*, a solar panel

project at commercial scale is by definition not intended for purchase by individual consumers, and so cannot satisfy the "in commerce" requirement of the VCPA. The court dismisses the VCPA claim because RBI's business model as Barton describes it in the amended complaint is directed only to commercial-scale businesses, not consumers.

Barton also named Gibraltar in Count XI. Gibraltar was not a party to the construction contract. It is RBI's parent corporation. There is no allegation that Gibraltar provided consumer goods or services itself to Barton. If the court is correct that the VCPA does not apply to the contractual relationship between Barton and RBI, then it certainly cannot supply a basis for the liability of a non-signatory to the contract.

## Conclusion

Defendants' Motion to Dismiss (Doc. 12) is GRANTED IN PART and DENIED IN PART. Count IV is dismissed with leave to amend. Counts V, VI, VII, X, and XI are dismissed. Defendant RBI's motion is denied with respect to Counts VIII and IX. All claims against defendant Gibraltar (Counts X and XI) are dismissed.

Dismissal is without prejudice as to all counts affected. Plaintiff may file an amended complaint within 30 days with respect to any count.

Dated at Rutland, in the District of Vermont, this 22nd day of July, 2021.

Geoffrey W. Crawford, Chief Judge
United States District Court