U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 FEB 21 PM 4:04

CLERK
BY  _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| BARTON SOLAR, LLC | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:21-cv-00025 |
| | ) | |
| RBI SOLAR, INC., | ) | |
|     Defendant. | ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR A MANDATORY INJUNCTION**
(Doc. 119; Doc. 139)

Plaintiff Barton Solar, LLC ("Barton" or "Plaintiff") seeks a mandatory injunction, compelling RBI Solar, Inc. ("RBI" or "Defendant") either to make emergency repairs to the solar array that is the subject of this litigation or certify that the array, in its current condition, is structurally sound. Plaintiff is represented by Andrew J. Snow, Esq. and Ronald W. Dunbar Jr., Esq. Jesse Lipcius, Esq. and Daniel Seff, Esq. represent Defendant.

**I.      Background**

The Barton Solar Project is a solar electric generation facility located in Barton, Vermont. (Doc. 112-10, ¶ 1.) It is owned and operated by Plaintiff. (Doc. 42, ¶ 1.) RBI is an Ohio company specializing in the design, manufacture, and installation of custom racking systems. (*Id.* ¶¶ 2, 7.) On July 21, 2014, Barton contracted with RBI to design and install a racking system and solar panels for the Barton Solar Project. (Doc. 105-4.) The racking system is the foundation of the solar array, and includes the posts driven into the ground as well as the above-ground structural components connected to the embedded posts. (*See* Doc. 112-10, ¶ 4; Doc. 112-13, ¶ 2.) The solar panels attach to the above-ground components of the racking system. (*See* Doc. 105-6 at 8; Doc. 112-1 at 42; Doc. 112-13, ¶ 2.)

RBI completed the installation of the racking system and solar panels in 2015. (*See* Doc. 112-10, ¶¶ 7, 19; Doc. 105-9 at 26:9-13.) Shortly after construction was completed, Barton told RBI it noticed damage to the solar array. (*See* Doc. 112-10, ¶ 8.) Barton alleged that the damage was the result of frost heaving. (*Id.* ¶ 9.) Frost heave is defined as "the upward ground movement that occurs as soil freezes." (Doc. 119-1 at 4.) Specifically, Plaintiff believed the upward movement of the embedded racking posts caused damage to other components of the racking system. (*See* Doc. 112-10, ¶¶ 8-9.)

Initially, RBI took some measures to try and remediate the problem. (Doc. 112-5 at 59:13-60:4, 63:25-64:7; *see* Doc. 112-14, ¶¶ 5-6.) For example, RBI installed tie-downs to some of the embedded posts. (Doc. 112-5 at 67:15-68:6.) RBI placed an anchor in the ground adjacent to the existing post and the post was tied to the anchor in an effort to keep the post from moving. *Id.*

On October 27, 2016, Krebs & Lansing Consulting Engineers ("K&L"), the civil site engineer for the Barton Solar Project, inspected the array. (Doc. 112-13, ¶¶ 4-5.) They marked the portion of the electrical conduit attached to the racking posts, in addition to the posts themselves, so, at a future date, K&L could determine whether any additional upward movement of the conduit or the racking posts had occurred. (*Id.* ¶¶ 4-7.) Upon returning on April 20, 2017, to remeasure the markings, K&L determined upward movement had occurred. (*Id.* ¶ 7.) K&L visited the site again on May 16, 2018, and discovered the embedded posts continued to move. (*Id.* ¶¶ 8-9.)

Barton alleges the frost heaving action has caused the racking posts to move upward, in varying amounts, causing the other components of the racking system to bend, twist, or break. (Doc. 112 at 13; *see* Doc. 112-1 at 4.) Barton further alleges that the majority of the posts have moved upward significantly enough that they no longer provide a stable foundation for the solar

panels, rending the entire solar array unstable. (*See* Doc. 119 at 10.) At this time, Barton asserts that the solar array is near "catastrophic failure" due to the extent of the movement in the racking posts. (*Id.* at 8.) Plaintiff alleges, in part, that RBI's design and installation of the racking system failed to consider the likelihood that the ground on which this array was built would experience frost heaving. (*See* Doc. 112-1 at 3.)

RBI disagrees as to the cause and extent of the damage and movement of the racking posts. (Doc. 105 at 8-9; Doc. 145 at 9-10.) RBI contends the need for emergency repairs is speculative, asserting that the movement in the racking posts may be due to factors outside of its work. (*See* Doc. 105 at 8.) RBI also disputes the reliability of Plaintiff's data as to the movement of the racking posts. (*Id.* at 11.) It asserts that K&L's post movement measurements are unreliable as no baseline measurements were taken at the time of installation, and therefore cannot support a claim for emergency relief. (*Id.*)

## II.     Procedural History

In this action, there are five remaining claims brought by Barton against RBI, including Breach of Express Warranty, Breach of Express Contract for Indemnification, Breach of Contract, Fraudulent Inducement, and Fraudulent Concealment. (Doc. 112-10, ¶ 2.) Barton seeks "full, just and adequate compensation, compensatory damages, treble damages, punitive damages, attorneys' fees, costs, and such other relief as is just and appropriate." (Doc. 42 at 19.) Defendant filed a Motion for Partial Summary Judgment on July 17, 2023 as to the counts alleging Breach of Express Contract for Indemnification, Fraudulent Inducement, and Fraudulent Concealment. (Doc. 105.) Plaintiff has not filed for summary judgment.

On February 23, 2024, Barton filed a Motion for a Mandatory Injunction to Compel RBI to make emergency repairs to the array. (Doc. 119.) Specifically, Barton asserted the following in support of its request for injunctive relief:

> [b]ecause of this frost action impact on the driven post foundations at the Barton Solar Project, the foundation system has failed, and has resulted in post heaving, which has and is causing ongoing damage to the electrical equipment, conduit, modules, and wiring at the project site, that has required annual repairs and remediation, and has cost Barton thousands of dollars in lost revenues due to an inability of the pv system to generate maximum power due to system outages and downtime caused by the heaving and concomitant damage.

(*Id.* at 5-6.) Barton further asserted that the costs being incurred by Barton are "accelerating." (*Id.* at 7.) Barton argued:

> [i]f this work is not completed, the next broken module in the array will render the array at less than 100% operating efficiency (since no replacement modules exist for that damage/destroyed module), which loss in production and revenue can never be replaced. As stated, this damage may also shut down the array inverters due to a "ground fault" condition resulting from this damage and destruction.

(*Id.* at 11.)

Additionally, Barton alleged that a significant number of posts in the racking system have heaved sufficiently to cause substantial destabilization of the solar array which necessitates immediate remediation. Barton stated that "[a]t any moment, an event such as a strong wind could completely topple portions of the system causing catastrophic damage to the array and anyone in the immediate vicinity." (*Id.* at 9.)

RBI, in a response filed March 8, 2024, opposed the granting of this motion. (*See* Doc. 121.) In this response, RBI challenged Barton's characterizations that "a strong wind event could completely topple portions of the [Project] causing catastrophic damage." (*Id.* at 4) (alteration in original) (quoting Doc. 119 at 9.) RBI further argued that the possibility of an award of monetary damages at the end of the litigation renders a mandatory injunction inappropriate. (*Id.* at 7-8.)

On July 19, 2024, this motion, as well as Defendant's Motion for Partial Summary Judgment, were stayed pending settlement negotiations. (Doc. 125.) The matter was referred to Magistrate Judge Kevin J. Doyle for that purpose. On September 27, 2024, the parties notified the court that settlement negotiations were not successful. (Doc. 133, ¶¶ 1-2.) The case was assigned to this court on October 1, 2024. (Doc. 135.)

A status conference was held on November 12, 2024. (*See* Doc. 137.) At the status conference, Barton indicated it intended to file a supplemental memorandum in support of the motion for a mandatory injunction and potentially file a motion to extend the discovery schedule to allow it to notice an expert witness. RBI had fourteen days thereafter to respond. Barton filed a Supplemental Motion for a Mandatory Injunction to Compel RBI Solar, Inc. to Make Emergency Repairs on November 22, 2024. (*See* Doc. 139.)

In the supplemental motion, Barton reiterated its earlier argument that emergency repairs needed to be made to avert a catastrophic failure of the solar array and argued that additional evidence existed to support the request for a mandatory injunction. (*Id.* at 1.) Alternatively, Plaintiff requested the court order RBI to certify the solar array, in its present condition and as modified by RBI over the years, is structurally sound and complies with building codes. (*Id.* at 6.) RBI responded on December 12, 2024. (*See* Doc. 145.) In its response, RBI reiterated its earlier arguments. (*See id.* at 1.) RBI further argued the new evidence introduced by Plaintiff is an unauthenticated hearsay report from an undisclosed expert. (*Id.*)

A hearing on the motions was held on January 6, 2025. (*See* Doc. 147.) The matters were taken under advisement.

### III.  Legal Standard for Issuance of a Mandatory Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right." *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 666-67 (2d Cir. 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). A party seeking a preliminary injunction must generally establish a likelihood of success on the merits, a likelihood of irreparable harm if preliminary relief is not granted, that the balance of equities tips in the party's favor, and that an injunction is in the public interest. *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024) (citing *JTH Tax*, 62 F.4th at 667). There are situations in which the "likelihood-of-success and irreparable-harm requirements become more demanding still, requiring that the plaintiff 'show a *clear or substantial* likelihood of success on the merits and make a *strong showing* of irreparable harm.'" *Id.* (quoting *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)). As the Second Circuit has explained:

> we have required the movant to meet a higher standard where: (i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits.

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33 (2d Cir. 1995).

The first situation applying the heightened standard is when the movant "seeks a so-called 'mandatory injunction' – that is, an injunction that 'alter[s] the status quo,' which usually is done by 'commanding some positive act.'" *JTH Tax*, 62 F.4th at 667 (alteration in original) (quoting *Tom Doherty Assocs.*, 60 F.3d at 34). The heightened standard is required for a mandatory injunction, in part, "because injunctions of those sorts tend to be particularly burdensome to the defendants subject to them." *Id.* In this case, Plaintiff agrees it seeks a mandatory injunction. (Doc. 119 at 11.) Accordingly, Plaintiff must establish both a "strong showing of irreparable harm"

as well as a "clear or substantial likelihood of success on the merits." If Plaintiff cannot establish both requirements, its request for a mandatory injunction must be denied.

### IV. Analysis – Whether Plaintiff has Demonstrated Irreparable Harm

Demonstration of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *JTH Tax*, 62 F.4th at 672 (internal quotation marks and citation omitted). Irreparable harm is defined as "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003). Under the typical standard for injunctive relief, the movant "must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *JTH Tax*, 62 F.4th at 672 (internal quotation marks and citation omitted). The ordinary standard for injunctive relief requires the movant to establish that "irreparable harm is not only 'possib[le]' but 'likely.'" *Daildeader*, 96 F.4th at 358 (alteration in original) (citing *Winter*, 555 U.S. at 22).

Under the heightened standard for a mandatory injunction, Plaintiff must make a strong showing of irreparable harm. "Injury is not irreparable when 'a monetary award' may provide 'adequate compensation.'" *Id.* (quoting *Tom Doherty Assocs.*, 60 F.3d at 37). Adequate compensation, however, does not require "perfect" compensation. *Id.*

> In support of its request for a mandatory injunction, Plaintiff alleged:
>
> Barton has to date paid at least, $225,000 in cumulative, annual, emergency electrical repairs to third parties; has incurred significant survey and electrical design work; has been forced to spend thousands to purchase additional pv solar modules to replace those broke by the defective racking system; and has incurred in excess of another $200,000 in cumulative management company employee time and expense, to orchestrate, bid, contract, manage, and inspect, this repair work since the installation of the array in 2014.

7

(Doc. 119 at 7.) Barton also argued that "[t]he RBI[ ] failure to honor its Warranty has cost (and continues to cost) Barton Hundreds of Thousands [sic] of dollars. Every day, week and month that passes, simply increases that figure along with the probability of a catastrophic failure of the racking system at any time." (*Id.* at 9-10.) The costs that Plaintiff has incurred and anticipates incurring are financial damages which can be quantified and sought at the conclusion of a trial. The "catastrophic failure" Plaintiff alleges may occur can be avoided by Plaintiff making repairs. If Plaintiff chooses to make the repairs, it may similarly seek to recover these quantifiable financial damages at the conclusion of a trial.

Additionally, Plaintiff alleges lost revenue and anticipated future repair work that will need to be completed. (*Id.* at 7-8.) Plaintiff asserts that without the repair work being completed, "production at the array will be suspended indefinitely, and there is a strong likelihood that Barton Solar would lose its Vermont SPEED contract to sell its electricity to the State. These events would ultimately lead to a default under Barton's lending documents, and financial ruin." (*Id.* at 11.)

These alleged damages are insufficient to make a strong showing of irreparable harm given that a monetary award following trial would provide adequate compensation. Barton's assessment of potential financial ruin is contingent on repair work not being completed. Plaintiff may make the ongoing repairs to the solar array. Additionally, Plaintiff may independently seek certification that the solar array is structurally sound and in compliance with relevant building codes. If, Plaintiff prevails at trial, Plaintiff would be entitled to compensation for these costs. While Plaintiff may wish to have those costs paid by Defendant at this time, adequate compensation following success at a trial on the merits renders preliminary relief unwarranted. *See Daileader*, 96 F.4th at 358.

There is no evidence in the record as to why Barton cannot continue making the necessary repairs, as it has been doing. During argument on the motion, Barton raised a concern that the necessary repairs would void the warranty provided in the contract between the parties. There is no evidence presented to support this notion. Barton has failed to establish irreparable harm. Therefore, the court need not address whether Plaintiff has established a clear or substantial likelihood of success on the merits.

## V.    Conclusion

For the foregoing reasons, Plaintiff's request for a mandatory injunction is hereby DENIED.

DATED at Rutland, in the District of Vermont, this 21st day of February 2025.

Mary Kay Lanthier
United States District Judge